[Filed June 24, 1891.]

## HENRY C. DRAY *v.* J. W. DRAY.

TRUST, WHEN IMPRESSED ON PROPERTY.—If one party obtain the legal title to property not only by fraud or by violation of confidence, or of fiduciary relation, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity will impress a constructive trust upon the property in favor of one who in good conscience is entitled to it and who is considered in equity as the beneficial owner.

TENANTS IN COMMON—WHEN THE ACT OF ONE INURES TO THE BENEFIT OF ALL.—When one tenant in common removes an incumbrance from the common property, or acquires the legal title when the same is outstanding, such acquisition inures to the benefit of all the persons interested in such common property.

TENANT IN COMMON—ACTS WHEN FRAUDULENT.—When one tenant in common induces a co-tenant to deed to him his interest in the common property which had been sold under an execution under the promise that such tenant will redeem such common property for the benefit of all the tenants in common, and then permits the time for redemption to expire, and on the next day takes a deed in his own name from the execution purchaser, such deed is constructively fraudulent, and the title thus acquired inures in equity to the benefit of all such tenants in common.

EXECUTION SALE—TITLE OF PURCHASER.—After the sale of real property on execution, the legal title remains in the judgment debtor until the sheriff's deed is executed. As long as this statutory right of redemption continues, the purchaser's title at the execution sale is inchoate and may be defeated by a redemption under the statute, but this right is not an equitable but purely a legal right.

Union county: M. D. CLIFFORD, Judge.

Defendant appeals.   Affirmed.

This cause comes here on appeal from a decree of the circuit court of Union county in favor of the plaintiff and against the appellant requiring him to convey an undivided one-third of the land in controversy to the plaintiff within thirty days, or in default of such conveyance that the decree stand in lieu thereof and operate as such conveyance.

The grounds upon which the court below proceeded in making this decree appear in the findings of the referee, which are as follows:

1.   That Andrew Dray died intestate in Union county,

Oregon, on the nineteenth day of May, 1887, leaving real estate and personal property in Union county and real estate in Washington county, Oregon. (Here follows a description of said real property not necessary to be here reproduced.)

2.   That plaintiff Henry C. Dray, defendant J. W. Dray, and S. A. Dray are the only heirs at law of Andrew Dray, deceased, and are all over the age of twenty-one years, and brothers.

3.   That said real estate was encumbered by mortgage at the time of the death of said Andrew Dray to the amount of about $1,200.

4.   That there were other debts of said deceased at the time of his death amounting to the sum of $300, and some personal property of said estate of the value of about the sum of $1,400.

5.   That about the twentieth day of August, 1887, defendant J. W. Dray was appointed administrator of the estate of Andrew Dray, deceased, by the county court of Union county, Oregon, and was such administrator thereafter until the month of June, 1889.

6.   That on the twelfth day of April, 1888, plaintiff Henry Dray executed to the defendant J. W. Dray a quitclaim deed releasing to the defendant all the right, title and interest of the plaintiff in the said real property, to wit: The undivided one-third interest in the property described in finding No. 1 hereof, which deed has a *habendum* clause in the following words: "To have and to hold the same together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, forever."

7.   That said deed was not delivered by Henry C. Dray to defendant J. W. Dray until about the twenty-eighth day of May, 1888.

8.   That the consideration of said deed expressed on the face thereof was the sum of $500, the receipt whereof is, by the terms of said deed, duly acknowledged.

9. That in fact there was no pecuniary consideration paid therefor by the defendant, but the actual consideration and inducement therefor was as follows:

10. That on January 2, 1888, all the right, title and interest of plaintiff Henry C. Dray in and to the real property of the estate of Andrew Dray, deceased, which was situated in Union county, was sold upon execution issued out of the circuit court of Union county in the case of *J. B. Worster* v. *Henry C. Dray*, in the sum of $1,170.96, to J. W. Shelton for the sum of $450; and that on or about the same time the portion of said land situated in Washington county was sold on a like execution on said judgment to the same purchaser for the sum of $950; that the said sale of the property situated in Union county was thereafter, on February 20, 1888, duly confirmed by said circuit court of Union county, and about the same time the sale of the real estate situated in Washington county was also confirmed.

11. That during the spring of the year 1888 plaintiff was attempting to procure money upon his interest in the real estate of A. Dray, deceased, by mortgage or otherwise, for the purpose of redeeming said real estate from said execution sales, and did obtain offers of such a loan on condition that the debts of said estate be paid and the administration discharged.

12. That the defendant J. W. Dray disapproved of plaintiff's getting the money, and represented to the plaintiff that it would be less dangerous to the plaintiff's interests and less expense, and it would result in keeping the property in the family for the plaintiff to convey to the defendant, and then the defendant borrow the money to pay all the debts of the estate and plaintiff's judgment also, and proposed to plaintiff that if he would so convey to the defendant, he would procure the money and redeem plaintiff's interest in said estate lands so sold on execution and pay the debts of the estate, and he would then re-convey to plaintiff his interest in said real estate charged with his share of said debts.

13.   That the plaintiff was unable to redeem the property from the said execution sale or borrow the money for that purpose except by means of and out of his interest in the said estate of Andrew Dray, deceased; and about the twenty-eighth day of May, 1888, plaintiff did accept said offer of the defendant; and for the purpose of carrying out such arrangement, plaintiff delivered to the defendant the deed referred to in finding No. 6 hereof which had been previously executed in contemplation of such purpose.

14.   That the offer and acceptance thereof contained in findings Nos. 12 and 13 hereof were the consideration for such deed.

15.   That the said offer and acceptance were not in writing, and were proven by parol testimony under the objections of the defendant's counsel.

16.   That subsequent to the delivery of said deed by plaintiff to defendant, referred to in finding No. 13, defendant procured from one A. J. Nickum, grantor of A. Dray, deceased, a deed to a portion of said real estate situated in Washington county, to be executed to himself for the purpose of perfecting the title thereto on account of a misdescription in the original conveyance thereof to said A. Dray, deceased.

17.   That the execution purchaser of said plaintiff's interest in said property gave to the plaintiff an option in writing that said property might be redeemed within thirty days, to wit, from the twentieth day of May, 1888, for the sum of $1,200.

18.   That the defendant J. W. Dray procured the money, to wit, $1,200, from Dan Marx to redeem plaintiff's interest in said property so sold on execution prior to the expiration of the time for redemption thereof, to wit, about the eighteenth of June, 1888.

19.   That he failed to redeem said real estate from said execution sale; but on the day after the expiration of the time for the redemption thereof, procured a quit-claim deed for the property from the execution purchaser thereof, for

which he paid the sum of $1,000, and executed a mortgage on the property for $200, which he has not paid.

20.  Defendant claims that he is the owner of said property by virtue of the said deed of plaintiff to him, and by virtue of said deed from the execution purchaser thereof to him, and denies the alleged oral agreement.

21.  That defendant failed to so redeem said property from said execution sale, or to pay off the indebtedness of said estate, or to re-convey said property to the plaintiff, and claims that he is the absolute owner thereof.

The learned referee also submitted the following conclusions of law:

1.  That on and prior to the twenty-eighth day of May, 1888, plaintiff was the owner of the equity of redemption in and to an undivided one-third interest in the real property described in finding of fact No. 1, theretofore sold on execution issued on the judgment of the circuit court of the state of Oregon for Union county in the case of *J. B. Worster* v. *Henry C. Dray*, this plaintiff, and that the equity of redemption expired on the twentieth day of June, 1888.

2.  That the conveyance executed by Henry C. Dray, the plaintiff herein, to the defendant J. W. Dray, of date April 12, 1888, by its terms is an absolute and unconditional transfer of the title or equity of redemption in the said real estate.

3.  That by reason of the fact that the defendant, as administrator of the estate of Andrew Dray, deceased, had the possession and control of the property of the estate, and the plaintiff, his brother, being in a financial strait, defendant occupied a fiduciary relation to the plaintiff in the taking of said deed.

4.  That the promise of the defendant in this case to re-convey the property to the plaintiff was void by the statute of frauds, and cannot be enforced as such; but the trust may be established by parol testimony of constructive fraud, or by reason of the existence of a fiduciary relation notwithstanding the express promise.

5. That the conduct and promises of the defendant in inducing the plaintiff to change his plans and release to the defendant an interest in the land for the purpose of enabling the defendant to accomplish the redemption of the land and the payment of the estate debts, and then diverting the property to other uses, will raise a constructive trust in favor of the plaintiff.

6. That no debt has been created by the defendant in his favor against the plaintiff's interest in the property with which the plaintiff is chargeable under the agreement, because the agreement was wholly disregarded by the defendant.

7. That the defendant is a trustee *ex maleficio* of the title he obtained from the plaintiff of date April 12, 1888.

8. That the defendant being a trustee of the plaintiff's equity of redemption for the purpose of redeeming the same from said execution sale, the title that he procured by the deed from the said execution purchaser should result to the plaintiff's benefit charged with the amount paid therefor, to wit, $1,000.

9. Equity will require the plaintiff to do equity; hence he must reïmburse the defendant for the amount advanced by him on the said property to the said execution purchaser, to wit, the sum of $1,000, with interest thereon from the twenty-first day of June, 1888.

10. That the plaintiff is entitled to a decree of this court declaring the defendant J. W. Dray to be a trustee for the plaintiff of an undivided one-third interest in all the real estate described in finding of fact No. 1 hereof, and that he be decreed to convey the same to plaintiff upon the payment by the plaintiff to the defendant of the sum of $1,000 with interest thereon from the twenty-first day of June, 1888.

Plaintiff excepted to the finding of law requiring him to pay defendant $1,000 as a condition precedent to his being restored to his estate for the reason that defendant had mortgaged the property for the money with which he

purchased the same of the execution purchaser, and the mortgage remains unsatisfied, which exception was allowed by the court. The defendant excepted to the 7th, 11th, 12th, 13th, 14th, and 18th findings of fact for the reason that none of them is supported by the evidence. He also excepted to the 3d, 4th, 5th, 6th, 7th, 8th, and 10th, and the last clause of the 9th conclusions of law on the ground that none of them is warranted by the facts found. These exceptions were overruled, and a decree having been entered for the plaintiff, the defendant appeals.

*J. W. Shelton*, for Appellant.

*C. H. Finn*, for Respondent.

STRAHAN, C. J.—The appellant presented in the court below a number of exceptions to the referee's report, which we need not notice *seriatim.* The exceptions to the referee's findings of fact cannot be sustained. They appear to be based mainly on the ground that the evidence is incompetent because it tends to prove an agreement in relation to the transfer of land without writing. Some of the evidence is undoubtedly incompetent if it were relied upon for that purpose; but the transfer of the plaintiff's title to the defendant under the particular circumstances of the case was sufficient to raise a resulting trust in the plaintiff's favor in the interest transferred.

The defendant did not purchase the land. The plaintiff made no gift of his interest to the defendant. The defendant acquired the naked legal title to be used by him in raising money to relieve the estate in which he and his brothers were alike interested, from financial embarrassment, and good faith as well as the plainest principles of honesty required that it should be used for that purpose alone, and when that is accomplished the plaintiff's interest should be returned to him. The particular facts of the case add much strength to this view. The plaintiff and defendant are brothers; the defendant was the administrator of their father's estate, who had then recently died,

XXI OR.—5.

and the defendant was in possession of the land in controversy which had descended to the plaintiff and defendant and another brother burdened with their ancestor's debts. The plaintiff was financially embarrassed, and the defendant represented to him if the entire title were vested in him he could and would raise money on the credit of the estate to discharge its debts. To allow the defendant to retain the title under the facts would give the sanction of the court to a fraud, not perhaps an actual fraud, but to a transaction that is constructively fraudulent if consummated in accordance with the defendant's contention.

Pomeroy's Eq. Juris. § 155, states one phase of the rule under consideration thus: "If one party obtain the legal title to property, not only by fraud, or by violation of confidence, or of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner."

But the appellant contends that he is entitled to hold the property by virtue of the deed which he took from Shelton, the purchaser at the execution sale. It is true this is not a statutory redemption, because the time for redemption under the statute had expired, nor had it at that time been enlarged by the purchaser; but the plaintiff and the defendant as between themselves had a common interest in the property,— the plaintiff's interest being only equitable, it is true, but still a beneficial interest,— and any acquisition of title by the defendant under the circumstances must inure to the benefit of all persons having an interest in the title. In addition to this, the inference from all the facts is too strong to be resisted that the defendant's conduct in waiting for the time for redemption to expire and then taking a deed from the execution purchaser, was for the express purpose of defeating and cutting off any supposed

interest which the plaintiff might have in said property. Viewed in this light, the defendant's act in taking said deed to himself, whether so designed or not, was constructively fraudulent. By that act he sought to gain an unconscientious advantage which he cannot be permitted to retain.

There is no specific exception to the referee's conclusions of law on the part of the defendant. We think some of the findings are open to criticism. For instance, the right of redemption which a judgment debtor has after sale of his realty on execution, is not an equity of redemption; it is purely a statutory right of redemption. The legal title still remains in the judgment debtor until the sheriff's deed is executed. As long as this statutory right of redemption continues, the purchaser's title at the execution sale is inchoate and may be defeated by a redemption under the statute; but this right is not an equitable but purely a legal right. But this misuse of terms does not affect the conclusions to be drawn from the findings, or in any manner affect the defendant. The general result of the findings is in harmony with what we conceive to be the equities of the case, and we find no sufficient reason in the record for disturbing them.

We therefore affirm the decree appealed from.